## THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ANGELA BROWN, an individual;
RAINA BIGHAM, an individual;
NATASHA BRADBURY, an
individual; LAUREN FARANO, an
individual; TERESA LEJA, an
individual; GISELLE LUZA, an
individual; KAYLA URENA, an
individual; KAYLE RODRIGUEZ, an
individual; LESLIE TEJEDA, an
individual; YANA TOYBER, an
individual; SUSANA VARGAS, an
individual; ASHLEY VENECIA,
individually and on behalf of all others
similarly situated,

Plaintiffs,

vs.

PEREGRINE ENTERPRISES, INC.
dba RICK'S CABARET NEW YORK,
a New York corporation; RCI
ENTERTAINMENT (NEW YORK)
INC., a New York corporation; RCI
HOSPITALITY HOLDINGS, INC. fka
RICK'S CABARETI
NTERNATIONAL, INC., a Texas
corporation; RCI MANAGEMENT
SERVICES, a Texas corporation;
ERIC LANGAN, an individual; ED
ANAKAR, an individual; DOE
MANAGERS 1-3; and DOES 4-10,
inclusive,

Defendants.

Case No. 1:22-cv-01455

**COLLECTIVE ACTION**

**COMPLAINT FOR DAMAGES**

1. **Failure to Pay Minimum Wage, 29 U.S.C. § 206;**
2. **Unlawful Taking of Tips, 29 U.S.C. § 203;**
3. **Illegal Kickbacks, 29 C.F.R. § 531.35;**
4. **Forced Tip Sharing, 29 C.F.R. § 531.35;**
5. **Failure to Pay Minimum Wage; N.Y. Lab. Law § 650, *et seq.*;**
6. **Illegal Kickbacks, N.Y. Lab. Law § 198-b, *et seq.*; and**
7. **Forced Tip Sharing, N.Y. Lab. Law § 196-d, *et seq.***

**DEMAND FOR JURY TRIAL**

Plaintiffs Angela Brown ("Brown"), Raina Bigham ("Bigham"), Natasha Bradbury ("Bradbury"), Lauren Farano ("Farano"), Terese Leja ("Leja"), Giselle Luza ("Luza"), Kayla Urena ("Urena"), Kayle Rodrgiuez ("Rodriguez"), Leslie Tejeda ("Tejeda"), Yana Toyber ("Toyber"), Susan Vargas ("Vargas") and Ashley Venecia ("Venecia") allege the following upon information and belief, based upon investigation of counsel, published reports, and personal knowledge:

## I.   <u>NATURE OF THE ACTION</u>

1.    Plaintiffs allege causes of action against defendants Peregrine Enterprises, Inc. dba Rick's Cabaret New York ("Defendant" or "Rick's Cabaret"), a New York corporation, RCI Entertainment (New York) Inc., a New York corporation, RCI Hospitality Holdings, Inc. fka Rick's Cabaret International, Inc., a Texas corporation, RCI Management Services, Inc., a Texas corporation, Eric Langan, an individual, Ed Anakar, an individual, Doe Managers 1-3, and Does 4-10, inclusive (collectively, "Defendants") for damages due to Defendants evading the mandatory minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* and illegally absconding with Plaintiffs' tips.

2.    As a result of Defendants' violations, Plaintiffs seek to recover all tips kept by their employer, liquidated damages, interest, and attorneys' fees and costs pursuant to the FLSA. This includes the return of all kickbacks that caused their payments to go below the minimum wage.

3.    These causes of action arise from Defendants' willful actions while Plaintiffs were employed by Defendants within the last six years from the filing of this lawsuit. During their time being employed by Defendants, Plaintiffs were denied minimum wage payments and denied overtime as part of Defendants' scheme to classify Plaintiffs and other dancers/entertainers as "independent contractors."

4.     Plaintiff worked at Defendants' principal place of business located at 50 West 33rd Street, New York, New York 10001 in the past six years.

5.     Defendants failed to pay Plaintiffs' minimum wages and overtime wages for all hours worked in violation of 29 U.S.C. §§ 206 and 207 of the FLSA.

6.     Furthermore, Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision. *See* 29 U.S.C. § 206.

7.     Defendants also violated New York state labor laws in the misclassification scheme.

8.     As a result of Defendants' violations, Plaintiffs seek to recover double damages for failure to pay minimum wage, overtime liquidated damages, interest, and attorneys' fees.

## II.   VENUE AND JURISDICTION

9.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because this action arises under the FLSA, 29 U.SC. §§ 201, *et seq*. Plaintiffs' state law claims for relief are within the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367(a).

10.    Venue is proper in this District because all or a substantial portion of the events forming the basis of this action occurred in this District. Defendants' club is located in this District and Plaintiffs worked in this District.

11.    Plaintiffs have satisfied all conditions precedent, if any, to the filing of this suit.

## III.   PARTIES

12.    Plaintiffs were employed by Defendants at Rick's Cabaret and Plaintiffs qualify as "employee(s)" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1) and New York law.

///

13.    Peregrine Enterprises, Inc. dba Rick's Cabaret New York ("Defendant" or "Rick's Cabaret") is a New York company with its principal place of business located at 50 West 33rd Street, New York, New York 10001. At all times mentioned herein, Rick's Cabaret was an "employer" or "joint employer" of Plaintiffs as defined by the FLSA, 29 U.S.C. § 203(d) and (g), and New York law. Rick's Cabaret's Chief Executive Office is defendant Eric Langan ("Defendant" or "Langan").  Rick's Cabaret may be served via its agent for service of process, Langan, at 10959 Cutten Road, Houston, Texas 77066.

14.    RCI Entertainment (New York) Inc. ("Defendant" or "RCI New York") is a New York company with its principal place of business located at 50 West 33rd Street, New York City, New York 10001. At all times mentioned herein, RCI New York was an "employer" or "joint employer" of Plaintiffs as defined by the FLSA, 29 U.S.C. § 203(d) and (g), and New York law. RCI New York may be served via its agent for service of process, Meister Seelin & Fein, LLP, 140 East 45th Street, 19th Floor, New York, New York, 10017. RCI New York is wholly owned by RHHI though its corporate structure.

15.    RCI Hospitality Holdings, Inc. ("Defendant" or "RHHI") is a Texas corporation with its principal place of business located 10959 Cutten Road, Houston, Texas 77066. It was previously known as Rick's Cabaret International, Inc. At all times mentioned herein, RHHI was an "employer" or "joint employer" of Plaintiffs as defined by the FLSA, 29 U.S.C. § 203(d) and (g), and New York law. RHHI's Chief Executive Officer, President and one of the Directors is Langan. RHHI may be served via its agent for service of process, Robert D. Axelrod, 5300 Memorial Drive, Suite 1000, Houston, Texas 77077. Rick's Cabaret is wholly owned by RHHI though its corporate structure.

16.    RCI Management Services ("Defendant" or "RCI Management") is a Texas corporation with its principal place of business located 10959 Cutten Road,

Houston, Texas 77066. At all times mentioned herein, RCI Management was an "employer" or "joint employer" of Plaintiffs as defined by the FLSA, 29 U.S.C. § 203(d) and (g), and New York law. RCI Management's Chief Executive Officer is defendant Ed Anakar ("Defendant" or "Anakar"). RCI Management Services may be served via its agent for service of process, Robert D. Axelrod, 5300 Memorial Drive, Suite 1000, Houston, Texas 77077. RCI Management Services provides services to Rick's Cabaret, including but not limited to accounting, payroll, legal, information technology, marketing, hospitality and property management. RCI Management Services is a wholly owned subsidiary of RHHI.

17.    Langan is an individual who resides in Texas. He is the owner, controlling shareholder, and exerts day to day management over the defendant entities through which he exerts operational and management control over Rick's Cabaret. Pursuant to an across the board, corporate wide policy dictated and enforced by Defendants, including Langan, as well as the other Defendants herein, Defendants refuse to pay dancers-entertainers minimum wage and earned overtime, by mischaracterizing them as "independent contractors." Langan, individually also exerts day to day management and operational control over Rick's Cabaret, and is frequently present at, and owns, directs, controls and manages the operations at the club. Langan is an "employer" or "joint employer" within the meaning of the FLSA.

18.    Anakar is an individual who resides in Texas. He is the director and president of RCI Management Services, which controls, and exerts day to day management over the defendant entities through which he exerts operational and management control over Rick's Cabaret. Anakar has been or is the Acting General Manager of Rick's Cabaret, Director of Operations for RHHI, regional Manager over Rick's Cabaret. Pursuant to an across the board, corporate wide policy dictated and enforced by Defendants, including Anakar, as well as the other

Defendants herein, Defendants refuse to pay dancers-entertainers minimum wage and earned overtime, by mischaracterizing them as "independent contractors." Anakar, individually also exerts day to day management and operational control over Rick's Cabaret, and is frequently present at, and owns, directs, controls and manages the operations at the club. Anakar is an "employer" or "joint employer" within the meaning of the FLSA.

19.    DOE MANAGERS 1 to 3 are managers/owners who control the policies and enforce the policies related to employment at Rick's Cabaret.

20.    At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(r)(1) of the FLSA because they have had employees at her club engaged in commerce her club which has travelled in interstate commerce. The club also sells liquor which has traveled in interstate commerce. Moreover, because of Defendants' interrelated activities, they function in interstate commerce. 29 U.S.C. § 203(s)(1).

21.    Furthermore, each Defendant's annual gross volume of sales made or business done is not less than $500,000.

22.    Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard.

23.    At all material times during the three (3) years prior to the filing of this action, Defendants categorized all dancers/entertainers employed at Rick's Cabaret as "independent contractors" and have failed and refused to pay wages or compensation to such dancers/entertainers. Plaintiffs were an individual employee who engaged in commerce or in the production of goods for commerce as required by 29 USC §§ 206-207.

24.    The true names, capacities or involvement, whether individual, corporate, governmental or associate, of the Defendants named herein as DOE

MANAGERS 1 through 3 and DOES 4 through 10, inclusive are unknown to Plaintiffs who therefore sues said Defendants by such fictitious names. Plaintiffs pray for leave to amend this Demand to show the true names and capacities when the same have been finally determined. Plaintiffs are informed and believe, and upon such information and belief allege thereon, that each of the Defendants designated herein as DOE is negligently, intentionally, strictly liable or otherwise legally responsible in some manner for the events and happenings herein referred to, and negligently, strictly liable intentionally or otherwise caused injury and damages proximately thereby to Plaintiff, as is hereinafter alleged.

25.    Plaintiffs are informed and believe that, at all relevant times herein, Defendants engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its employees and agents, and other Defendants and are vicariously or strictly liable for the wrongful conduct of its employees and agents as alleged herein.

26.    Plaintiffs are informed and believe that, and on that basis allege that, each of the Defendants acted, in all respects pertinent to this action, as the agent or employee of each other, and carried out a joint scheme, business plan, or policy in all respect thereto and, therefore, the acts of each of these Defendants are legally attributable to the other Defendants, and that these Defendants, in all respects, acted as employer and/or joint employers of Plaintiff in that each of them exercised control over her wage payments and control over her duties.

27.    Plaintiffs are informed and believe that, and on that basis allege that, at all relevant times, each and every Defendant has been the agent, employee, representative, servant, master, employer, owner, agent, joint venture, and alter ego of each of the other and each was acting within the course and scope of his or her ownership, agency, service, joint venture and employment.

28.     At all times mentioned herein, each and every Defendant was the successor of the other and each assumes the responsibility for the acts and omissions of all other Defendants.

## IV.   ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### (Against All Defendants)

### A.   FACTUAL ALLEGATIONS

29.     Defendants operate an adult-oriented entertainment facility located at 50 West 33rd Street, New York, New York 10001. At all times mentioned herein, Defendants were "employer(s)" or "joint employer(s)" of Plaintiffs.

30.     At most, if not all times during the six (6) years prior to the filing of the instant action, Defendants categorized all dancers/entertainers employed by Defendants as "independent contractors" and have failed and refused to pay wages to such dancers.

31.     At all times relevant to this action, Defendants exercised a great deal of operational and management control over the subject club, particularly in the areas of terms and conditions of employment applicable to dancers and entertainers.

32.     Brown worked as a dancer for Defendants from approximately July 2020 to March 2020. She is filing a consent to opt into this collective as Exhibit 1 to this Complaint.

33.     Bigham worked as a dancer for Defendants from approximately July 2019 to January 2020. She is filing a consent to opt into this collective as Exhibit 2 to this Complaint.

34.     Bradbury has worked as a dancer for Defendants since 2014 to the present. She is filing a consent to opt into this collective as Exhibit 3 to this Complaint.

///

35.     Farano worked as a dancer for Defendants from approximately September 2017 to December 2021. She is filing a consent to opt into this collective as Exhibit 4 to this Complaint.

36.     Leja worked as a dancer for Defendants from approximately February 2012 to December 2019. She is filing a consent to opt into this collective as Exhibit 5 to this Complaint.

37.     Luza worked as a dancer for Defendants from approximately October 2014 to October 2020. She is filing a consent to opt into this collective as Exhibit 6 to this Complaint.

38.     Urena worked as a dancer for Defendants from approximately June 2015 to April 2020. She is filing a consent to opt into this collective as Exhibit 7 to this Complaint.

39.     Rodriguez worked as a dancer for Defendants from approximately August 2021 to October 2021. She is filing a consent to opt into this collective as Exhibit 8 to this Complaint.

40.     Tejeda worked as a dancer for Defendants from approximately October 2013 to March 2020. She is filing a consent to opt into this collective as Exhibit 9 to this Complaint.

41.     Toyber worked as a dancer for Defendants from approximately 2009 to 2019. She is filing a consent to opt into this collective as Exhibit 10 to this Complaint.

42.     Vargas worked as a dancer for Defendants from approximately February 2013 to March 2018. She is filing a consent to opt into this collective as Exhibit 11 to this Complaint.

43.     Venecia worked as a dancer for Defendants from approximately April 2021 to May 2021. She is filing a consent to opt into this collective as Exhibit 12 to this Complaint.

44.    The primary duty of a dancer/entertainer is to dance and entertain customers, and give them a good experience. Specifically, a dancer/ entertainer performs stage and table dances, and entertains customers on an hourly basis.

45.    Stated differently, dancers/entertainers dance on stage, perform table dances, and entertain customers in VIP rooms, all while nude or semi-nude.

46.    Plaintiffs worked and performed at the adult-oriented entertainment facilities multiple shifts per week. Plaintiffs were an integral part of Defendants' business which operated solely as an adult-oriented entertainment facility featuring nude or semi-nude female dancers/ entertainers.

47.    Defendants did not pay dancers/ entertainers on an hourly basis.

48.    Defendants exercised significant control over Plaintiffs during their shifts and would demand that Plaintiffs work certain days and tell Plaintiffs what time they were permitted to leave.

49.    Defendants set prices for all VIP performances.

50.    Defendants set the daily cover charge for customers to enter the facility and had complete control over which customers were allowed in the facility.

51.    Defendants controlled music for Plaintiffs' performances.

52.    Defendants controlled the means and manner in which Plaintiffs could perform.

53.    Defendants had the authority to suspend, fine, fire, or otherwise discipline entertainers for non-compliance with her rules regarding dancing.

54.    Defendants actually suspended, fined, fired, or otherwise disciplined entertainers for non-compliance with her rules regarding dancing.

55.    Although Defendants allowed dancers/entertainers to choose their own costumes, Defendants reserved the right to decide what a particular entertainer was allowed to wear on the premises.

56.     Plaintiffs were compensated exclusively through tips from Defendants' customers. That is, Defendants did not pay Plaintiffs whatsoever for any hours worked at their establishments.

57.     Defendants also required Plaintiffs to share their tips with Defendants and other non-service employees who do not customarily receive tips, including the managers, disc jockeys, and the bouncers.

58.     Defendants are in violation of the FLSA's tipped-employee compensation provision, 29 U.S.C. § 203(m), which requires employers to pay a tipped employee a minimum of $2.13 per hour. Defendants also violated 29 U.S.C. § 203(m) when they failed to notify Plaintiffs about the tip credit allowance (including the amount to be credited) before the credit was utilized. That is, Defendants' exotic dancers/entertainers were never made aware of how the tip credit allowance worked or what the amounts to be credited were. Furthermore, Defendants violated 29 U.S.C. § 203(m) because they did not allow Plaintiffs to retain all of their tips and instead required that they divide her tips amongst other employees who do not customarily and regularly receive tips. Because Defendants violated the tip-pool law, Defendants lose the right to take a credit toward minimum wage.

59.     Defendants exercised significant control over Plaintiffs through written and unwritten policies and procedures.

60.     Rick's Cabaret provided and paid for all advertising and marketing efforts undertaken on behalf of Rick's Cabaret.

61.     Rick's Cabaret paid for the buildings used by Rick's Cabaret, maintenance of the facility, the sound system, stages, lights, beverage and inventory used at the facility.

62.     Defendants made all hiring decisions regarding wait staff, security, entertainers, managerial and all other employees on the premises.

63.     Rick's Cabaret opportunity for profit and loss far exceeded Plaintiffs' opportunity for profit and loss from work at Rick's Cabaret.

64.     Exotic dancing is an integral part of Rick's Cabaret operations. Rick's Cabaret advertising prominently displays exotic dancing for its customers. Rick's Cabaret is well known as a "strip club."

65.     Defendants need dancers/ entertainers to successfully and profitably operate the Rick's Cabaret business model.

66.     The position of dancer/entertainer requires no managerial skill of others.

67.     The position of dancer/entertainer requires little other skill or education, formal or otherwise.

68.     The only requirements to become an entertainer at Rick's Cabaret are "physical attributes" and the ability to dance seductively. Plaintiffs did not have a formal interview but instead were glanced over "up and down" and participated in a brief audition by the manager before being offered an employment opportunity. The amount of skill required is more akin to an employment position than that of a typical independent contractor. Defendants do not require prior experience as an entertainer or any formal dance training as a job condition or prerequisite to employment. Defendants do not require the submission of an application or a resume as part of the hiring process. In fact, Plaintiffs have little or no formal dance training and experience before auditioning to dance at Rick's Cabaret.

69.     Defendants failed to maintain records of wages, fines, fees, tips and gratuities and/or service charges paid or received by dancers/entertainers.

70.     Plaintiffs were not paid an hourly minimum wage or *any* hourly wage or salary despite being present at Defendants' facility and required to work and entertain its customers at any time during an eight-plus (8+) hour work shift.

///

71.    Plaintiffs were not paid overtime wages at one-and-a-half (1½) times the regular

72.    Plaintiffs were not paid an hourly minimum wage for the typical half (1/2) hour of time expended prior to each shift to get ready for work, including applying makeup and hair, and to comply with Defendants' dress and appearance standards.

73.    Plaintiffs were not paid an hourly minimum wage for the time they were required to wait at Rick's Cabaret until the premises and the parking lot were cleared of customers.

74.    The FLSA Collective Members had the same pay structure and were under the same controls as Plaintiffs.

75.    Defendants have never paid Plaintiffs and FLSA Collective Members any amount as wages whatsoever, and have instead unlawfully required Plaintiffs and FLSA Collective Members to pay them for the privilege of working.

76.    The only source of monies received by Plaintiffs (and the collective they seek to represent) relative to their employment with Defendants came in the form of gratuities received directly from customers, a portion of which Plaintiffs and the FLSA Collective Members were required to pay to Defendants.

77.    Plaintiffs and the FLSA Collective Members who worked at Rick's Cabaret performed precisely the same job duties—dancing and entertaining at Rick's Cabaret.

78.    Plaintiffs and the FLSA Collective Members who worked at Rick's Cabaret during the applicable limitations period(s) were subject to the same work rules established by the Defendants as identified above.

79.    Plaintiffs and the FLSA Collective Members at Rick's Cabaret were subject to the terms and conditions of employment and the same degree of control, direction, supervision, promotion and investment imposed or performed by

Defendants.

80.     Plaintiffs and the FLSA Collective Members at Rick's Cabaret during the applicable limitations period(s) were subject to the same across-the-board, uniformly applied corporate policy mandated by Defendants.

81.     Plaintiffs and the FLSA Collective Members at Rick's Cabaret, during the applicable limitations period, were subject to the same fees and fines imposed by Defendants.

82.     As a result of Defendants' across-the-board, standard operating procedure of mischaracterizing dancers/entertainers as "independent contractors" and their consequent failure to pay any wages or compensation whatsoever, it is a certainty that numerous other current and former dancers and entertainers who worked at Rick's Cabaret during the applicable limitations period would elect to participate in this action if provided notice of same.

83.     Upon information and belief, more than one hundred (100) dancers and entertainers have worked at Rick's Cabaret during the three (3) to five (5) years prior to the filing of this action.

84.     Plaintiffs are "similarly situated" to the 29 U.S.C. § 216(b) class of persons they seek to represent, and will adequately represent the interests of the class.

85.     Plaintiffs have hired counsel experienced in class actions and in collective actions under 29 U.S.C. § 216(b) who will adequately represent the collective.

86.     Defendants failed to keep records of tips, gratuities and/or service charges paid to Plaintiffs or any other dancer/entertainer and failed to maintain and furnish wage statements to Plaintiffs.

87.     Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the

following information:

a.    The time of day and day of week on which the employees' work week begins;

b.    The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

c.    An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

d.    The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

e.    The hours worked each workday and total hours worked each workweek;

f.    The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

g.    The total premium for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under this section;

h.    The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

i.    The dates, amounts, and nature of the items which make up the total additions and deductions;

j.    The total wages paid each pay period; and

k.    The date of payment and the pay period covered by payment.

29 C.F.R. 516.2, 516.5.

88.    Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiffs and the FLSA Collective Members. Because Defendants' records are inaccurate and/or inadequate, Plaintiffs and the FLSA Collective Members can meet their burden under the

FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of their work "as a matter of a just and reasonable inference." *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Plaintiffs seek to put Defendants on notice that they intend to rely on *Anderson* to provide the extent of their unpaid work.

### B. THIS DISTRICT COURT FOUND RICK'S CABARET MISCLASSIFIED DANCERS IN 2015, YET ITS LIMITED CHANGES AND REFUSAL TO PROPERLY CLASSIFY DANCERS EVIDENCES DEFENDANTS' WILLFULNESS

89.     Defendants' method of paying Plaintiffs in violation of the FLSA was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA. Defendants misclassified Plaintiffs with the sole intent to avoid paying them in accordance to the FLSA; the fees and fines described herein constitute unlawful "kickbacks" to the employer within the meaning of the FLSA, and Plaintiffs are entitled to restitution of such fines and fees.

90.     In 2015, this Court found that Rick's Cabaret dancers were employees of Rick's Cabaret under both the FLSA and New York Labor Law. *Hart v. Rick's Cabaret International, Inc.*, 967 F.Supp.2d 901 (S.D.N.Y. 2013). Defendants have been sued multiple times and are well aware that they violate the FLSA. The directors for HCCI are counsel who are well aware of the near unanimity of district court granting dancers' summary judgment and circuit court opinions upholding those rulings. Yet, Defendants have not changed their practices.

### C. INDIVIDUAL LIABILITY UNDER THE FAIR LABOR STANDARDS ACT

91.     In *Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013), the U.S. Court of Appeals for the Second Circuit held that individuals can be liable for FLSA

violations under an "operational control." *Id.* This elaborate on the test applied in *Carter v. Dutchess Community College*, 725 F.2d 8 (2d Cir. 1984). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Second Circuit stated that the definition of "employer" under FLSA is not limited by the common law concept of "employer" but "is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes."

92.     Where an individual exercises "control over the nature and structure of the employment relationship," or "economic control" over the relationship, that individual is an employer within the meaning of the FLSA, and is subject to liability. *Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999). The Ninth Circuit highlighted factors related to "economic control," which included ownership interest, operational control of significant aspects of the day-to-day functions, the power to hire and fire employees, determine salaries, and the responsibility to maintain employment records.

93.     Langan is individually liable for failing to pay Plaintiffs their wages.

94.     Anakar is individually liable for failing to pay Plaintiffs their wages.

95.     DOE MANAGERS 1 to 3 and DOES 4 through 10 are individually liable for failing to pay Plaintiff her wages. The actual identities of DOE MANAGERS 1 to 3 and DOES 4 through 10 are unknown at this time.

## D.    NEW YORK STATE CLAIMS

96.     Plaintiffs and Collective Members are current and former employees of Defendants within the meaning of N.Y. Lab. Laws §§ 651(5) and 190.

97.     The minimum wage provisions of N.Y. Lab. Laws, § 650, *et seq*. and the supporting New York State Department of Labor Regulations, N.Y. Comp. Codes R. & Regs title 12, § 137-1.1., *et seq.* apply to Defendants, who constitute employers under New York's minimum wage law.

## V.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### FAILURE TO PAY MINIMUM WAGE PURSUANT TO THE FLSA, 29 U.S.C. § 206

#### (By Plaintiffs Individually and for the Collective Against All Defendants)

98.   Plaintiffs hereby incorporate by reference and re-allege paragraphs 1-97 as though fully set forth herein.

99.   Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

100.   Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

101.   Defendants failed to pay Plaintiffs the minimum wage in violation of 29 U.S.C. § 206.

102.   Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiffs the minimum wage under the FLSA.

103.   Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after they learned that her misclassification scheme and compensation policies were illegal.

104.   Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, minimum wage compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

///

## SECOND CAUSE OF ACTION

### Unlawful Taking of Tips in Violation of the FLSA, 29 U.S.C. § 203
### (By Plaintiffs Individually and for the Collective Against All Defendants)

105.    Plaintiffs hereby incorporate by reference and re-allege paragraphs 1-104 as though fully set forth herein.

106.    Plaintiffs customarily and regularly received more than thirty U.S. Dollars ($30.00) a month in tips and therefore is a tipped employee as defined in the FLSA, 29 U.S.C. § 203(t), *see also* 29 C.F.R. § 531.50.

107.    At all relevant times, each Defendant is an "employer" or joint employer of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

108.    Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

109.    Defendants operate an enterprise engaged in commerce within the meaning for the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

110.    Under TIPA:

> [a]n employer may not keep tips received by its employees for any purpose including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not it takes a tip credit.

29 U.S.C. § 203.

111.    Defendants kept a portion of tips paid to Plaintiffs by Defendants' customers in the form of fees, fines, mandatory charges and other payments to management, house moms, disc jockeys, and floor men in violation of TIPA.

112.    Defendants required Plaintiffs to participate in an illegal tip pool, which included employees who do not customarily and regularly receive tips, and do not have more than a *de minimis*, if any, interaction with customers leaving the

tips (such as the Club DJs, security, and management).

113.  The contribution Defendants required Plaintiffs to make after each shift was arbitrary and capricious and the distribution was not agreed to by Plaintiffs or other dancers; but rather, was imposed upon Plaintiffs and other dancers.

114.  By requiring Plaintiffs to pool their tips with club management, including the individual Defendants named herein, Defendants "retained" a portion of the tips received by Plaintiffs in violation of the FLSA.

115.  Defendants did not make any effort, let alone a "good faith" effort, to comply with the FLSA as it relates to compensation owed to Plaintiffs.

116.  At the time of her illegal conduct, Defendants knew or showed reckless disregard that the tip-pool which they required Plaintiffs to contribute included non-tipped employees and, therefore, was statutorily illegal. In spite of this, Defendants willfully failed and refused to pay Plaintiffs the proper amount of the tips to which they were entitled.

117.  Defendants' willful failure and refusal to pay Plaintiffs the tips she earned violates the FLSA.

118.  Defendants kept a portion of tips paid to Plaintiff by Defendants' customers in the form of fees, fines, mandatory charges and other payments to management, house moms, disc jockeys, and door men in violation of TIPA.

119.  As a result of the acts and omissions of the Defendants as alleged herein, and pursuant to 29 U.S.C. §§ 216(b) and 260, Plaintiffs are entitled to damages in the form of all misappropriated tips, plus interest; as liquidated damages, an amount equal to all misappropriated tips, mandatory attorneys' fees, costs, and expenses.

///

///

## THIRD CAUSE OF ACTION

### ILLEGAL KICKBACKS, 29 C.F.R. § 531.35

### (By Plaintiffs Individually and for the Collective Against All Defendants)

120.   Plaintiffs hereby incorporate by reference and re-allege paragraphs 1-119 as though fully set forth herein.

121.   Defendants required Plaintiffs to pay monetary fees to Defendants and other Rick's Cabaret employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

122.   Defendants' requirement that Plaintiffs pay fees to Defendants and other Rick's Cabaret employees violated the "free and clear" requirement of 29 C.F.R. § 531.35.

123.   Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35 as alleged above, they were not entitled to utilize the FLSA's tip-credit provision with respect to Plaintiffs' wages.

124.   This results in Plaintiffs not only failing to receive a minimum wage, but also have further fees/moneys owed to her minimum wage taken from her by the Defendants. This requires them to receive the fees back and the minimum wage to be made whole under the FLSA.

125.   Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35, all monetary fees imposed on Plaintiffs are classified as illegal kickbacks.

126.   Plaintiffs are entitled to recover from Defendants all fees that Defendants required Plaintiffs to pay in order to work at Rick's Cabaret, involving but not limited to house fees.

///

///

///

## FOURTH CAUSE OF ACTION

### FORCED TIPPING, 29 C.F.R. § 531.35

### (By Plaintiffs Individually and for the Collective Against All Defendants)

127.   Plaintiffs hereby incorporate by reference and re-allege paragraphs 1-126 as though fully set forth herein.

128.   Defendants required Plaintiffs to pay monetary fees to other Rick's Cabaret employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

129.   Defendants' requirement that Plaintiffs pay fees to other Rick's Cabaret employees violated the "free and clear" requirement of 29 C.F.R. § 531.35.

130.   Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35 as alleged above, they were not entitled to utilize the FLSA's tip-credit provision with respect to Plaintiffs' wages.

131.   Plaintiffs are entitled to recover from Defendants all fees that Defendants required Plaintiffs to pay other employees in order to work at Rick's Cabaret, involving but not limited to forced tip sharing.

## FIFTH CAUSE OF ACTION

### NEW YORK LAB. LAWS – MINIMUM WAGE

### (By Plaintiffs Individually Against All Defendants)

132.   Plaintiffs hereby incorporate by reference and re-allege paragraphs 1-131 as though fully set forth herein.

133.   Defendants willfully violated N.Y. Lab. Laws, § 650, *et seq*. and the supporting New York State Department of Labor Regulations, N.Y. Comp. Codes R. & Regs title 12, § 137-1.1., *et seq*. apply to Defendants, who constitute employers under New York's minimum wage law.

///

134.   Defendants were required to pay Plaintiffs and Collective Members the prevailing minimum wage in the New York State in the six years preceding the initial filing of this Complaint, until the final adjudication of this matter.

135.   Defendants refuse to pay. The conduct above was done willfully.

136.   Plaintiffs are entitled to damages in the form of all misappropriated tips, plus interest; as liquidated damages, an amount equal to all misappropriated tips, mandatory attorneys' fees, costs, and expenses.

## SIXTH CAUSE OF ACTION

### NEW YORK LAB. LAWS – UNLAWFUL KICKBACKS

### (By Plaintiffs Individually Against All Defendants)

137.   Plaintiffs hereby incorporate by reference and re-allege paragraphs 1-136 as though fully set forth herein.

138.   Defendants willfully violated N.Y. Lab. Laws, § 198-b, *et seq*. and the supporting New York State Department of Labor Regulations, N.Y. Comp. Codes R. & Regs title 12, § 137-1.1., *et seq.* apply to Defendants, who constitute employers under New York's minimum wage law.

139.   N.Y. Lab. Laws, § 198-b prohibits Defendants from requesting, demanding, or receiving, either before or after an employee is engaged, a return, donation, or contribution f any part or all of the employee's wages, salary, supplements, or other thing of value, upon the statement, representation, or understating that failure to comply with such request or demand will prevent such employee from procuring or retaining employment.

140.   Defendants did such acts in the forms of house fees/license fees/lease fees (requirements to pay money to work, and via the forced subsidization of the club via forced tipping other underpaid DJs, security, house moms and managers.

///

///

## SEVENTH CAUSE OF ACTION

### NEW YORK LAB. LAWS – DEMANDING, ACCEPTING & RETAINING GRATUITIES
### (By Plaintiffs Individually Against All Defendants)

141.    Plaintiffs hereby incorporate by reference and re-allege paragraphs 1-140 as though fully set forth herein.

142.    Defendants willfully violated N.Y. Lab. Laws, § 196-d, *et seq.* and the supporting New York State Department of Labor Regulations, N.Y. Comp. Codes R. & Regs title 12, § 137-1.1., *et seq.* apply to Defendants, who constitute employers under New York's minimum wage law.

143.    N.Y. Lab. Laws, § 196-d prohibits Defendants from requesting, demanding, or receiving, either before or after an employee is engaged, a return, donation, or contribution of any part or all of the employee's wages, salary, supplements, or other thing of value, upon the statement, representation, or understating that failure to comply with such request or demand will prevent such employee from procuring or retaining employment.

144.    Defendants did such acts in the forms of house fees/license fees/lease fees (requirements to pay money to work, and via the forced subsidization of the club via forced tipping other underpaid DJs, security, house moms and managers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests of this Court the following relief:

1.  For compensatory damages according to proof of at least $2,000,000 for Plaintiffs;

2.  For special damages according to proof;

3.  For restitution of unpaid monies;

4.  For attorneys' fees;

5.  For costs of suit incurred herein;

6.  For statutory penalties;

7.  For civil penalties;

8.  For pre-judgment interest;

9.  For post-judgement interest;

10. For general damages in an amount to be proven;

11. For injunctive relief and

12. For such other and further relief as the tribunal may deem just and proper.

Dated: February 22, 2022                 **CARPENTER & ZUCKERMAN**

_/s/ Peter Cho_
Peter Cho (NY State Bar No. 2910339)
John P. Kristensen (_Pro Hac Vice_ forthcoming)
Jesenia A. Martinez (_Pro Hac Vice_ forthcoming)
8827 W. Olympic Boulevard
Beverly Hills, California 90211
Telephone: (310) 273-1230
Email: _pcho@cz.law_
          _kristensen@cz.law_
          _jmartinez@cz.law_

**_Attorneys for Plaintiffs_**

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all such triable claims.

Dated: February 22, 2022                    CARPENTER & ZUCKERMAN

_/s/ Peter Cho_

Peter Cho (NY State Bar No. 2910339)
John P. Kristensen (_Pro Hac Vice_ forthcoming)
Jesenia A. Martinez (_Pro Hac Vice_ forthcoming)
8827 W. Olympic Boulevard
Beverly Hills, California 90211
Telephone: (310) 273-1230
Email: _pcho@cz.law_
        _kristensen@cz.law_
        _jmartinez@cz.law_

**_Attorneys for Plaintiffs_**