# THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANGELA BROWN, *et al*. | Case No.: 1:22-cv-01455-KPF |
| Plaintiffs, | **ORAL ARGUMENT REQUESTED** |
| v. | **COLLECTIVE ACTION** |
| PEREGRINE ENTERPRISES, INC. dba RICK'S CABARET NEW YORK, a New York corporation; RCI ENTERTAINMENT (NEW YORK) INC., a New York corporation; RCI HOSPITALITY HOLDINGS, INC. fka RICK'S CABARET INTERNATIONAL, INC., a Texas corporation; RCI MANAGEMENT SERVICES, a Texas corporation; ERIC LANGAN, an individual; ED ANAKAR, an individual; DOE MANAGERS 1-3; and DOES 4-10, inclusive, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND ISSUANCE OF NOTICE PURSUANT TO § 216(B) OF THE FAIR LABOR STANDARDS ACT**<br><br>Complaint Filed: February 22, 2022 |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................ 2

MEMORANDUM OF POINTS AND AUTHORITIES ................................... 7

    I.     INTRODUCTION ................................................................ 7

    II.    RELEVANT FACTS AND ALLEGATIONS ................................ 10

    III.   SIMILARLY SITUATED CLASS MEMBERS EXIST THROUGH
         DEFENDANTS' CONTROL OF DANCERS, COMMON SCHEME OF
         MISCLASSIFYING DANCERS AS INDEPENDENT CONTRACTORS
         AND WAGE AND TIP POLICIES ........................................... 11

    IV.   CIRCUIT AND DISTRICT COURTS HAVE ROUTINELY HELD
         THAT ECONOMIC SCHEMES USED BY EXOTIC DANCE CLUBS
         SIMILAR TO DEFENDANTS' POLICIES VIOLATE THE FLSA .......... 14

    V.    THIS COURT HAS ORDERED THAT DEFENDANTS WAIVED
         THEIR RIGHT TO ARBITRATE ............................................ 16

    VI.   LEGAL STANDARD ........................................................ 22

        A.    PLAINTIFFS HAVE MADE THEIR REQUIRED MODEST
              FACTUAL SHOWING THAT SIMILARLY SITUATED CLASS
              MEMBERS EXIST AND THAT OTHER DANCERS ARE
              LIKELY TO JOIN THIS LAWSUIT ................................... 24

        B.    THE COURT SHOULD APPROVE PLAINTIFFS' PROPOSED
              NOTICE AND NOTICE PROCESS ................................. 27

    VII.  CONCLUSION .............................................................. 31

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Inter-Con Sec. Sys., Inc.*,

    242 F.R.D. 530 (N.D. Cal. 2007)................................................................... 21

*Butler v. PP & G, Inc.*,

    No. CIV.A. WMN-13-430, 2013 WL 5964476 (D. Md. Nov. 7, 2013) ........ 14

*Butler v. PP & G, Inc.*,

    No. CIV.A. WMN-13-430, 2014 WL 199001 (D. Md. Jan. 16, 2014).......... 14

*Carrillo v. Schneider Logistics, Inc.*,

    No. CV 11-8557 CAS (DTBx), 2012 WL 556309 (C. D. Cal. Jan. 31, 2012)22

*Collins v. Barney's Barn, Inc.*,

    No. 4:12CV00685 SWW, 2013 WL 11457080 (E.D. Ark. Nov. 14, 2013) .. 13

*D'Antuono v. C & G of Groton, Inc.*,

    No. 3:11cv33 (MRK), 2011 WL 5878045 (D. Conn. Nov. 23, 2011) ........... 19

*Deatrick v. Securitas Sec. Servs. USA, Inc.*,

    No. 13-cv-05016-JST, 2014 WL 878203 (N.D. Cal. Oct. 20, 2014) ............. 21

*Degidio v. Crazy Horse Saloon & Rest., Inc.*,

    No. 4:13-cv-02136-BHH, 2015 WL 5834280, at *19 (D.S.C. Sept. 30, 2015)18

*Espinoza v. Fly Low, Inc.*,

    No. 14-cv-21244-CIV-GOODMAN.................................................................. 7

*Espinoza v. Gilardi South Enterprises, Inc.*,

    No. 14-CV-21244-GOODMAN, 2014 WL 54103017 (S.D. Fla. Oct. 23, 2014)
    ................................................................................................................. 18

*Green v. Plantation of Louisiana, LLC*,

    No. 2:10-0364, 2010 WL 5256348 (W.D. La. Dec. 15, 2010)....................... 19

*Green v. Plantation of Louisiana, LLC*,

---

No. 2:10-0364, 2010 WL 5256354 (W.D. La. Nov. 24, 2010) ...................... 19

*Gomez v. MLB Enters., Corp.*

No. 15-cv-3326(CM), 2018 WL 3019102 (S.D.N.Y. June 5, 2018)…….11

*Harrell v. Diamond A Entm't. Inc.*,

992 F.Supp. 1343 (M.D. Fla. 1997)................................................................. 14

*Hart v. Rick's Cabaret Int'l, Inc.*,

967 F.Supp.2d 901 (S.D.N.Y. 2013) ............................................................. 13

*Henderson v. 1400 Northside Drive, Inc*.,

No. 1:13–CV–3767–TWT, 2015 WL 3823995 (N.D. Ga. June 19, 2015) .... 13

*Hernandez v. NGM Mgmt. Grp. LLC*,

No. 12 Civ. 7795(RWS), 2013 WL 5303766 (S.D.N.Y. Sept. 20, 2013) ...... 21

*Hoffmann–La Roche Inc. v. Sperling*,

493 U.S. 165 (1989)............................................................................ 15, 20, 21

*In re Penthouse Executive Club Comp. Litig*.,

No. 10Civ. 1145(NRB), 2010 WL 4340255 (S.D.N.Y. Oct. 27, 2010) ......... 19

*Jones v. JGC Dallas LLC*,

No. 3:11-CV-2743-O, 2012 WL 6928101 (N.D. Tex. Nov. 29, 2012).......... 18

*Jones v. JGC Dallas LLC*,

No. 3:11-CV-2743-O, 2013 WL 271665 (N.D. Tex. Jan. 23, 2013) ............. 18

*Levi v. Gulliver's Tavern, Incorporated*,

No. 15-cv-216-WES, 2018 WL 10149710 (D.R.I. Apr. 23, 2018) ............... 13

*Martin v. Priba Corp.*,

No. 3:91-CV-2786-G, 1992 WL 486911 (N.D. Tex. 1992)........................... 14

*Martin v. Sprint/united Mgmt. Co.*,

No. 15 Civ. 5237 (PAE), 2016 WL 30334 (S.D.N.Y. Jan. 4, 2016) .............. 22

*Mason v. Fantasy, LLC*,

No. 13–CV–02020–RM–KLM, 2015 WL 4512327 (D.Colo. July 27, 2015) 13

*McFeeley v. Jackson St. Ent., LLC*,

    47 F.Supp.3d 260 (D.Md. 2014) ..................................................................... 13

*Morse v. Mer Corp.*,

    No. 1:08-cv-1389-WTL-JMS, 2010 WL 2346334 (S.D. Ind. June 4, 2010) . 14

*Ortega v. Spearmint Rhino Companies Worldwide*,

    No. 17-cv-206-JGB, 2019 WL 2871156 (C.D. Cal. May 15, 2019) .............. 18

*Otey v. CrowdFlower, Inc.*,

    No. 12-cv-05524-JST, 2013 WL 4552493 (N.D. Cal. Aug. 27, 2013) .......... 22

*Reich v. Circle C. Investments, Inc.*,

    998 F.2d 324 (5th Cir. 1993) ........................................................................ 14

*Reich v. Priba Corp.*,

    890 F.Supp. 586 (N.D. Tex. 1995) ............................................................... 14

*Ruffin v. Entm't of the E. Panhandle*,

    No. 3:11-CV-19, 2012 WL 761659 (N.D.W. Va. Mar. 7, 2012) ................... 18

*Stevenson v. Great Am. Dream, Inc.*,

    No. 1:12-CV-3359-TWT, 2013 WL 4217128 (N.D. Ga. Aug. 14, 2013)...... 18

*Stevenson v. Great Am. Dream, Inc.*,

    No. 1:12–CV–3359–TWT, 2013 WL 6880921 (N.D. Ga. Dec. 31, 2013) .... 13

*Syed v. M-I, L.L.C.*,

    No. 1:12-CV-1718 AWI MJS, 2014 WL 6685966 (E.D. Cal. Nov. 26, 2014)21

*Thompson v. Linda and A. Inc.*,

    779 F.Supp.2d 139 (D.D.C. 2011) ................................................................ 14

*Thornton v. Crazy Horse, Inc.*,

    No. 3:06–CV–00251–TMB, 2012 WL 2175753 (D. Alaska June 14, 2012). 14

*Vasto v. Credico (USA) LLC*,

    No. 15 Civ. 9298 (PAE), 2016 WL 2658172 (S.D.N.Y. May 5, 2016) ......... 21

*Vaughn v. Paradise Entm't Group, Inc.*,

No. 14-CV-00914-SCJ (N.D. Ga. Mar. 15, 2016)........................................... 13

*Verma v. 3001 Castor, Inc.*,

　937 F.3d 221 (3rd Cir. 2019) ........................................................................ 13

*Verma v. 3001 Castor*, *Inc.*,

　No. 13-3034, 2014 WL 2957453 (E.D. Pa. June 30, 2014) ..................... 13, 18

**Statutes**

29 U.S.C. § 203 ...................................................................................................... 9

29 U.S.C. § 206 ...................................................................................................... 9

29 U.S.C. § 207 ...................................................................................................... 6

29 U.S.C. § 255(a) ............................................................................................... 20

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs Angela Brown ("Brown"), Raina Bigham ("Bigham") Natasha Bradbury ("Bradbury"), Lauren Farano ("Farano") , Teresa Leja ("Leja"), Giselle Luza ("Luza"), Kayla Urena ("Urena"), Kayle Rodriguez ("Rodriguez"), Leslie Tejeda ("Tejeda"), Yana Toyber ("Toyber"), Susana Vargas ("Vargas"), Ashley Venecia ("Venecia"), and Marina Papadakis ("Papadakis") (collectively, "Plaintiffs") worked as exotic dancers at  Rick's Cabaret in New York, New York. Rick's Cabaret is an exotic dance club that is owned and operated by defendants Peregrine Enterprises, Inc. dba Rick's Cabaret New York,  RCI Entertainment (New York) Inc., RCI Hospitality Holdings, Inc. fka Rick's Cabaret International, Inc., RCI Management Services, Eric Langan, and  ED Anakar (collectively, "Defendants"). Plaintiffs brought this action seeking to recover wages owed to them and other dancers who have been misclassified as independent contractors at Rick's Cabaret under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. *See* Dkt. 1.

As is typical at the outset of a case brought under the FLSA, Plaintiffs now move this Court for an order allowing notice of this action to be sent to other similarly situated dancers to inform them of their right to opt-in to this case under § 216(b) of the FLSA. This Court already ruled that Defendants have waived their

right to arbitrate this matter by refusing to pay their share of the arbitration fees to the American Arbitration Association ("AAA"), which caused AAA to refuse to arbitrate matters involving Defendants moving forward. *See* Dkt. 55; Dkt. 37-27. Defendants have therefore waived arbitration regarding the other Rick's Cabaret dancers who have signed arbitration agreements naming AAA as the exclusive arbitrator for disputes between the parties.

Plaintiffs seek conditional certification in a case with one job position, at a single business location, with the same job duties, working under the same management, and subject to the same unlawful policies of misclassification and absconding of tips.

The "modest" evidentiary burden required for issuance of notice under 29 U.S.C. § 216(b) requires a plaintiff to make "a modest factual showing to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated to law." *Lynch v. United Servs. Auto. Ass'n*, 491 F.Supp.2d 357, 368 (S.D.N.Y. 2007).

Plaintiffs easily satisfy this modest standard because Defendants have misclassified all dancers at Rick's Cabaret as independent contractors, and courts have routinely granted conditional certification and authorized the issuance of notice pursuant to 29 U.S.C. § 216(b) in nearly identical cases involving exotic dancers who challenged their classification as independent contractors. Numerous

district courts within this District have certified collective FLSA actions against exotic dance clubs in nearly identical circumstances. *See Hart v. Rick's Cabaret, Int'l, Inc.*, 967 F.Sup..2d 901, 909-910 (S.D.N.Y. 2013) (granting summary judgment to exotic dancer plaintiffs after certifying FLSA collective class); *In re Penthouse Exec. Club Comp. Litig.*, No. 10-1145, 2010 WL 4340255 at * 4 (S.D.N.Y. Oct. 27, 2010) (granting conditional class certification where dancers submitted affidavits in support of their motion); *Mangahas v. Eights Oranges, Inc*., No. 22-cv-4150, 2022 WL 10383029 at *9 (S.D.N.Y. Oct. 18, 2022) (granting FLSA Class certification after Plaintiffs filed three declarations in support).

Defendants made operational decisions at Rick's Cabaret, including applying pay policies equally to all dancers and Plaintiffs. Plaintiffs and other dancers at Rick's Cabaret are similar in every way except hours and days worked, and wages actually due—facts which are irrelevant to this inquiry. Moreover, Plaintiffs submit that evidence that the employment misclassification issue can be resolved with common proof: evidence of Defendants' employment policies giving rise to these allegations that are substantially standard to all the dancers at Rick's Cabaret. Pursuant to these policies, Defendants exercise significant and uniform control over the way in which dancers perform at Rick's Cabaret. In addition, Defendants' pay practices, which Plaintiffs contend violate the FLSA, are equally applied to all dancers. These facts, which Plaintiffs expect will be further

supported and also expanded upon in discovery, satisfy the modest factual showing for the Court to authorize the issuance of notice under 29 U.S.C. § 216(b).

***The statute of limitations continues to run for collective members, making prompt notice critical***. Defendants can always move to decertify the case and have individual cases tried, though that would be impractical and costly for Defendants. The procedures of a collective action expedite resolution of matters instead of clogging up the Court's docket and causing a waste of judicial resources and time.

For these reasons, and those discussed below, the Court should grant Plaintiffs' motion.

## II.    RELEVANT FACTS AND ALLEGATIONS

Rick's Cabaret is the current trade name of defendant Peregrine Enterprises, Inc. It is owned and/or managed by defendants Eric Langan and Ed Anakar. Defendant RCI Hospitality Holdings, Inc. fka Rick's Cabaret International, Inc. is the holding company, and a publicly traded entity.

Plaintiffs were employed by Defendants at Rick's Cabaret at various times between at least 2014 and 2021. *See* Dkt. 21, pgs. 8-9, ¶ 34-43.

Plaintiffs' causes of action arise from Defendants' willful actions while employed by Defendants, including Plaintiffs being denied minimum wage payments as part of Defendants' scheme to classify Plaintiff and other dancers/entertainers as "independent contractors." Additionally, Defendants

illegally absconded with Plaintiffs' tips. Plaintiffs' Complaint for Damages includes[1] causes of action: (1) Failure to Pay Minimum Wages, 29 U.S.C. § 206 and N.Y. Lab. Law § 650, et seq.; (2) Illegal Kickbacks, 29 C.F.R. § 531.35; and N.Y. Lab. Law § 198-b; (4) Unlawful Taking of Tips, 29 U.S.C. § 203; and (4) Forced Tip Sharing, 29 C.F.R. § 531.35 and N.Y. Lab. Law § 196-d, et seq. *See* Dkt. 1.

## III. SIMILARLY SITUATED CLASS MEMBERS EXIST THROUGH DEFENDANTS' CONTROL OF DANCERS, COMMON SCHEME OF MISCLASSIFYING DANCERS AS INDEPENDENT CONTRACTORS AND WAGE AND TIP POLICIES

The exotic dancers/entertainers employed by Defendants at Rick's Cabaret are all similarly situated. All exotic dancers/entertainers were subject to the same pay policies of Defendants. No dancer was paid hourly for her work. Instead, all dancers retained portions of their dance fees and customer gratuities and tips. Defendants failed to pay all of their dancers minimum wages for all hours worked in violation of the FLSA. *See* Declaration of Angela Brown ("Brown Decl.") at ¶ 6; *see also* Declaration of Lisa Sdrigotti ("Sdrigotti Decl.") at ¶ 6; Declaration of Kayla Urena ("Urena Decl.") at ¶ 7.

All dancers were forced to pay Defendants an average of $40 to $60 in "house fees per shift. Each dancer was also forced to share their tips of approximately $35 to $45 per shift, with other employees including the DJs, house

moms, and managers. *See* Brown Decl. at ¶ 7; Sdrigotti Decl. at ¶ 7; Urena Decl. at ¶ 8.  All dancers were subjected to late fees for failing to arrive for a shift at the club's designated times. The late fee ranged from $20 to $150 depending on the time a dancer arrived for her shift. *See* Brown Decl. at ¶ 8; Sdrigotti Decl. at ¶ 8; Urena Decl. at ¶ 9.

Defendants misclassified all of the exotic dancers/entertainers at Rick's Cabaret as independent contractors. Defendants engaged in this common practice to deprive dancers their hourly wages, forcing the dancers to "tip out" other employees also in an effort to subsidize labor costs. Defendants dictated to Plaintiffs and all other exotic dancers/entertainers at Rick's Cabaret how dancers performed their work, set prices that customers would be charged per dance, set fee splits, tip policies and house fee policies, and controlled when and how dancers performed. *See* Brown Decl. at ¶¶ 10-12; Sdrigotti Decl. at ¶¶ 10-12; Urena Decl. at ¶¶ 11-13.

Defendants controlled the dance prices and set the price floor for lap dances at a minimum of $20 per dance. Defendants also set the prices charged to customers for VIP dances. Defendants set the VIP dance price at approximately $150 for 15 minutes, with the club pocketing $50 and the dancer keeping $100. Defendants also charged a fee to dancers/entertainers of roughly $10 to $30 for every VIP dance they performed. Defendants also required dancers/entertainers to

accept Rick's Cabaret's artificial in-house currency, "Funny Money," as payment for dances. Dancers/entertainers were charged a 20% fee to convert Funny Money into cash. *See* Brown Decl. at ¶¶ 13-16; Sdrigotti Decl. at ¶¶ 13-16; Urena Decl. at ¶¶ 14-17.

Defendants would regularly take large cuts of dance fees that Plaintiffs earned by performing private dances for customers. See Sdrigotti Decl. ¶¶ 17. Indeed, Defendants would regularly strip Plaintiffs of 40%, or more, of private dance fees. *Id*. All dancers/entertainers at Rick's Cabaret were required to commit—and stick to—a work schedule. Defendants also charged dancers/entertainers fees for missing a shift.

All dancers/entertainers were expected to tip out other employees, including DJs, house moms, floor personnel, and managers. Management expected all dancers/entertainers to tip out other employees. If a dancer/entertainer failed to tip out other employees working that night, management would retaliate against them. *See* Brown Decl. at ¶ 22; Sdrigotti Decl. at ¶¶ 22; Urena Decl. at ¶ 24.

Defendants also exercised a great deal of control over how dancers/entertainers performed. Dancers/entertainers were required to complete their entire shift for any particular day they showed up to work. All dancers/entertainers were required to ask for permission to leave early during a shift. Defendants exercised control over whether dancers/entertainers were allowed

to dance at the club, refusing to let a dancer/entertainer work a shift for any reason. *See* Brown Decl. ¶¶ 23-26; Sdrigotti Decl. ¶¶ 23-26; Urena Decl. ¶¶ 25-28.

Plaintiffs are aware that other similarly situated exotic dancers/entertainers who are/were employees of Defendants and are interested in joining this lawsuit and desire to opt-in as plaintiffs. *See* Brown Decl. ¶ 28; Sdrigotti Decl. ¶ 28; Urena Decl. ¶ 28. It is currently anticipated that there are at least 20 to 40 other current/former dancers at Rick's Cabaret who are either interested in joining the present action, or would be interested if they were given notice of the lawsuit's existence. *See* Brown Decl. ¶ 32.

## IV.    CIRCUIT AND DISTRICT COURTS HAVE ROUTINELY HELD THAT ECONOMIC SCHEMES USED BY EXOTIC DANCE CLUBS SIMILAR TO DEFENDANTS' POLICIES VIOLATE THE FLSA

Plaintiffs' claims are centered on their misclassification as independent contractors. Time and time again, circuit courts and district courts have ruled in near unanimity that exotic dancers are employees — not independent contractors. As recently as October of 2022, the Eastern District of New York has affirmed this position. *See 7714 Ent. Corp.,* 2022 WL 4229260 at *18 (finding that adult entertainment club violated the FLSA by misclassifying its dancers/entertainers as independent contractors).

Nearly every time the issue has been presented, courts across the nation have found exotic dancers/entertainer are employees under the FLSA — not

independent contractors. *See Mason v. Fantasy, LLC*, No. 13–CV–02020–RM–KLM, 2015 WL 4512327, at *13 (D.Colo. July 27, 2015); *Henderson v. 1400 Northside Drive, Inc*., No. 1:13–CV–3767–TWT, 2015 WL 3823995, at *5 (N.D. Ga. June 19, 2015); *Levi v. Gulliver's Tavern, Incorporated*, No. 15-cv-216-WES, 2018 WL 10149710 (D.R.I. Apr. 23, 2018) (granting dancer Plaintiffs' partial summary judgment that they are employees under the FLSA); *Vaughn v. Paradise Entm't Group, Inc.*, No. 14-CV-00914-SCJ, Dkt. 190 (N.D. Ga. Mar. 15, 2016) (summary judgment); *Verma v. 3001 Castor, Inc*., No. 13-3034, 2014 WL 2957453, at *5 (E.D. Pa. June 30, 2014), *aff'd on appeal in Verma v. 3001 Castor, Inc.*, 937 F.3d 221 (3rd Cir. 2019); *McFeeley v. Jackson St. Ent., LLC*, 47 F.Supp.3d 260, 279 (D.Md. 2014) *Stevenson v. Great Am. Dream, Inc.*, No. 1:12–CV–3359–TWT, 2013 WL 6880921, at *6 (N.D. Ga. Dec. 31, 2013); *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F.Supp.2d 901, 912-913 (S.D.N.Y. 2013); *Collins v. Barney's Barn, Inc.*, No. 4:12CV00685 SWW, 2013 WL 11457080 (E.D. Ark. Nov. 14, 2013); *Butler v. PP & G, Inc.*, No. CIV.A. WMN-13-430, 2013 WL 5964476, at *9 (D. Md. Nov. 7, 2013), *reconsideration denied*, 2014 WL 199001 (D. Md. Jan. 16, 2014); *Thornton v. Crazy Horse, Inc.*, No. 3:06–CV–00251–TMB, 2012 WL 2175753 (D. Alaska June 14, 2012); *Clincy v. Galardi S. Enters., Inc.*, 808 F.Supp.2d 1326, 1343 (N.D. Ga. 2011); *Thompson v. Linda and A. Inc.*, 779 F.Supp.2d 139, 151 (D.D.C. 2011); *Morse v. Mer Corp.*, No. 1:08-cv-1389-

WTL-JMS, 2010 WL 2346334, at *6 (S.D. Ind. June 4, 2010); *Harrell v. Diamond A Entm't. Inc.*, 992 F.Supp. 1343, 1348 (M.D. Fla. 1997); *Reich v. Priba Corp.*, 890 F.Supp. 586, 594 (N.D. Tex. 1995); *Martin v. Priba Corp.*, No. 3:91-CV-2786-G, 1992 WL 486911, at *5 (N.D. Tex. 1992); *see also Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 330 (5th Cir. 1993) (affirming district court's determination that exotic dancers were employees under the FLSA).

## V.    THIS COURT HAS ORDERED THAT DEFENDANTS WAIVED THEIR RIGHT TO ARBITRATE

Defendants often offer a litany of arguments in an effort to complicate the lenient standard for conditional certification, which are routinely and rightly rejected as misplaced and/or premature. For example, employers facing conditional certification of misclassification claims tend to argue that "the determination of whether an individual is properly classified as an independent contractor is inherently fact-specific, requiring individualized inquiries." *See Summa v. Hofstra Univ.*, 715 F.Supp.2d 378, 387 (E.D.N.Y. June 1, 2010) (rejecting defendants' argument that an individualized inquiry was necessary, and conditional certification therefore inappropriate, because the class involved employees holding different positions at Hofstra University); *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 161 (S.D.N.Y. Mar. 19, 2014) (granting conditional certification and rejecting defendants' argument that an individualized inquiry was necessary); *Jacob v. Duane Reade, Inc.*, No. 11 Civ. 0160(JPO), 2012 WL 260230, at *8 (S.D.N.Y. Jan.

27, 2012) (same). Accordingly, this Court should not vacillate in grant Plaintiffs'
request for conditional certification because of a plead for "individual inquiries."

What's more, in this case, this Court has ruled that Defendants have waived
their right to individualized arbitration. *See* Dkt. 54. As this Court is aware,
Defendants refused to pay their share of arbitration fees pursuant to AAA's
Employment Fee Schedule. After several attempts to seek Defendants' compliance
with its rules, AAA administratively close the cases due to Defendants' refusal to
pay their share of the filing fees. Moreover, AAA requested that Defendants
remove its name from arbitration agreements, and refuses to administer any
arbitrations with Defendants. *See* Dkt. 37-27.

This Court found that Defendants waived their right to arbitration Dkt. 54.
This Court reasoned that Defendants waived their right to arbitrate because
"[D]efendant's refusal to pay the fees required by AAA [caused] AAA [to close]
the case, and direct[] [D]fendants to remove them from their agreements. Now
plaintiffs find themselves in a state of limbo. They have no place to vindicate . . .
their claims, and that [was] due largely, if not exclusively, to [D]efendant's choices
with respect to the arbitration." *Id*.

This Court also held that, by waiving its right to arbitrate, or arbitration has
already been had, that the collective waiver is now inapplicable. *See* Dkt. 54. That
is to say, Defendants have either waived enforcement of the original arbitration

agreement, or arbitration has already been had pursuant to the original arbitration agreement. In any event, "the class and collective waiver is inapplicable at this stage." *Id*. Defendants thus may not rely on the collective waiver to avoid collective certification.

Moreover, courts in this District have found class and collective waivers in arbitration agreements unenforceable where a party has materially breached the agreement. *Gomez v. MLB Enters., Corp.*, No. 15-cv-3326(CM), 2018 WL 3019102 at *13 (S.D.N.Y. June 5, 2018) (refusing to enforce an arbitration agreement and finding defendants have materially breached the arbitration agreements by failing to abide by AAA's rules, causing AAA to refuse to arbitrate claims involving defendants). Like the defendants in *Gomez*, Defendants here materially breached the original arbitration agreement that this court has deemed "inapplicable" by failing to abide by AAA's employment fee schedule, causing AAA to refuse to arbitrate claims involving defendant. This Court thus should not hesitate to conditionally certify this case because of a waived, breached, and inapplicable arbitration agreement.

District Courts in the Ninth Circuit have held that the fact that an FLSA plaintiff has signed an arbitration agreement will not preclude certification of a collective action. *Ortega v. Spearmint Rhino Cos., Worldwide, Inc.*, No. 17-cv-206-JGB, 2109 WL 2871156, at *8 (C.D. Cal. May 15, 2019) (issuing collective

certification even though some plaintiffs were compelled to arbitration, and some were still in the putative collective case); *Harris v. 68-444 Perez, Inc., et al., No. EDCV 19-2184-JGB*, Docket 41 (C.D. Cal. Apr. 23, 2020). Courts have acknowledged that "[e]arly certification in an FLSA [case] is part of the development of the factual record," and have noted that bypassing or delaying the notice stage is prejudicial to workers who might be deprived "of a meaningful opportunity to participate." *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 629 (E.D. Cal. 2009). By contrast, early notice "risks little harm to defendant, who will be free to move for decertification once the factual record has been finalized and the time period for opting in has expired." *Id*. Thus, "[i]n determining whether plaintiffs have met th[e] standard [for issuing notice] courts need not consider evidence provided by defendants." *Id*. at 628.

Early notice is also important because unlike in a class action brought under Rule 23, the statute of limitations for an FLSA claim is not tolled with respect to unnamed collective action members merely by filing a complaint. Rather, each member must affirmatively toll the statute of limitations by "opting into" the lawsuit. *Nash v. CVS Caremark Corp*., 683 F. Supp. 2d 195, 200 (D.R.I. 2010); *see also* 29 U.S.C. § 257 (The "statute of limitations [of] such action shall be considered to have been commenced as to him when, and only when, his written consent to become a party plaintiff to the action is filed in the court in which the action was brought").

Before this case goes any further, Rick's Cabaret dancers should be notified of their right to opt-in to the case because the statute of limitations continues to run on their potential FLSA claims. The only way to preserve the potential claims of the Putative Class Members is through notice affording them of their rights and their opportunity to join this suit.

Plaintiffs expect that Defendants will argue that, because the Court's November 3, 2022 Order did not pertain to Putative Class Members, that notice is not necessary because the Putative Class Members have signed arbitration agreements. This argument should not persuade the Court.

Again, under § 216(b), notice is to be issued early in the case. The purpose of this early notice is to allow this Court to determine the potential scope of the case and to inform workers of their rights under the FLSA. In this way, notice pursuant to § 216(b) enables the Putative Class Members to challenge alleged violations, promoting compliance with the law. *See Hoffman-LaRoche, Inc.* v. *Sperling*, 493 U.S. at 171 (1989); *Sbarro, Inc.*, 982 F.Supp. at 262. ("[C]ourts have endorsed the sending of notice early [to facilitate] the FLSA's broad remedial purpose . . . .")

If this Court issues notice early in the case, then even if Defendants' arbitration clauses are ultimately enforced for some workers, the notice will at least accomplish the FLSA's purpose—workers who wish to pursue their claims, after

having received the notice, will be able to do so through arbitration, rather than never learn of this lawsuit. However, if this Court allows Defendants to use an arbitration clause as a shield to prevent Putative Class Members from learning of this lawsuit and a sword to reduce its potential liability, the arbitration clause will be used to prevent most workers affects from Defendants' misclassification from even knowing of their opportunity to pursue their FLSA claims, undermining the purpose of § 216(b)—promoting compliance with the Act.

Moreover, as noted above, this Court has already ordered that Defendants have waived arbitration before AAA. *See* Dkt. 54. Putative Class Members likely have signed arbitration agreements designating AAA as the exclusive arbitrator of disputes between Putative Class Members and Defendants. Because Defendants refusal to pay its share of the filing fees caused AAA to refuse to arbitrate claims involving Defendants, and this Court reference this fact in finding Defendants have waived their right to arbitration, this Court should find that Defendants have waived arbitration as to all Putative Class Members who have signed an arbitration agreement designating AAA as the exclusive arbitrator. These Putative Class Members must receive notice of their opportunity to participate in this lawsuit.

Plaintiffs now ask this Court to conditionally certify this matter as a Collective Action pursuant to 29 U.S.C. § 216(b). In seeking such certification,

Plaintiffs aim to solidify a place, and a procedural mechanism, to vindicate their claims, on behalf of themselves and all others similarly situated.

## VI.    LEGAL STANDARD

The FLSA allows workers to bring an action either on an individual basis or on a collective basis for "other employees similarly situated." 29 U.S.C. § 216(b). Here, Plaintiffs seek to bring this case on behalf of all dancers who have worked at the same club, Rick's Cabaret, and have been classified as independent contractors under the same policies.

However, similarly situated individuals may not be a party to a collective action under the FLSA unless they affirmatively opt in to the case. *Id*. To provide those individuals with an opportunity to opt in, "[t]he court may authorize the named FLSA Plaintiff to send notice to all potential Plaintiff[s] and may set a deadline for those potential Plaintiff[s] to join the suit." *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Notice is intended to issue early in the life of a collective action in order to establish the contours of the action and to further the broad remedial purpose of the FLSA. *Id.* at 171 (discussing the importance of early notice in collective actions in order to "ascertain[] the contours of the action at the outset").

Because the determination that plaintiffs are similarly situated is merely a preliminary one, courts generally grant conditional certification. *Amador v.*

*Morgan Stanley & Co. LLC*, No. 11 Civ. 4326(RJS), 2013 WL 494020, at *3

(S.D.N.Y. Feb. 7, 2013). Second Circuit courts conduct a two-stage inquiry to

determine whether opt-in plaintiffs are "similarly situated." *See Vaughn v. Mort.*

*Source LLC*, No. 08 Civ. 4737(LDW)(AKT), 2010 WL 1528521, at *3-4

(E.D.N.Y. Apr. 14, 2010). Courts often refer to the first stage in the inquiry as the

"notice" stage. *Lynch v. United Servs. Auto. Ass'n*, 491 F.Supp.2d 357, 368

(S.D.N.Y. 2007). At this stage, the Court determines whether the named plaintiffs

and the potential opt-in plaintiffs are sufficiently "similarly situated" to issue

notice and to allow the case to proceed as a collective action through discovery. *Id.*

At the second stage of the Court's inquiry, defendants may move to decertify the

class, which typically occurs after the parties have completed discovery. *Cohen v.*

*Gerson Lehrman Grp., Inc.*, 686 F.Supp.2d 317, 327 (S.D.N.Y. 2010).

At the first stage of the inquiry, a plaintiff must make only "a modest factual

showing sufficient to demonstrate that they and potential plaintiffs together were

victims of a common policy or plan that violated the law." *Hoffman*, 982 F.Supp.at

261. Alternatively, Courts describe this burden as "very low" or "minimal." *Lynch*,

491 F.Supp.2d at 368; *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y.

2006).

At this first stage in the Court's inquiry, the Court "does not resolve factual

disputes, decide ultimate issues on the merits, or make credibility determinations."

*Vaughan*, 2010 WL 1528521, at *7 (declining to assign weight to defendants' competing affidavits and reasoning that "[a]ttacks on credibility . . . are not properly addressed in the context of a motion for conditional certification").

A.    **Plaintiffs Have Made Their Required Modest Factual Showing That Similarly Situated Class Members Exist and That Other Dancers Are Likely to Join This Lawsuit**

The burden at the notice stage is very low, with Plaintiffs only having to demonstrate a "modest factual showing" that they and potential opt-in plaintiffs were victims of a common policy or plan that violates the law. *In re Penthouse Executive Club Comp. Litig.*, 2010 WL 4340255 at *3. This burden has been deemed satisfied with three sworn declarations from a FLSA plaintiffs. *See Mangahas v. Eight Oranges, Inc.*, No. 22-cv-4150(LJL), 2022 WL 10383029 at *3 (S.D.N.Y. 2022) (granting conditional certification to FLSA plaintiffs based on three declarations). "Where [a] plaintiff puts forth evidence that her labor law rights were violated and that a representative number of other employees had their rights violated, she has made a sufficient showing to satisfy the 'modest' burden." *See Cheng v. Via Quadronno LLC*, 2021 WL 4319569, at *3 (S.D.N.Y. Sept. 23, 2021) (holding that the "personal observations of one plaintiff's affidavit" are "sufficient to make the modest factual showing necessary to conditionally certify [a] class").

Plaintiffs' burden to make a "modest factual showing" that other similarly

situated plaintiffs exist is particularly low in the Second Circuit. While "mere unsupported assertions" are insufficient to pass the first step, it "should remain a low standard of proof because the purpose of the first stage [in the class certification analysis] is to merely determine whether similarly situated plaintiffs do in fact exist." *Hoffman v. Sbarro, Inc.*, 982 F.Supp. 249, 261 (S.D.N.Y. 1997)). Plaintiffs may meet their "minimal" burden to show that similarly situated plaintiffs exist by showing that "there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions." *Amador v. Morgan Stanley & Co. LLC*, 2013 WL 494020, at *4 (S.D.N.Y. Feb. 7, 2013); *Fraticelli v. MSG Holdings, L.P.*, 2014 WL 1807105, at *1 (S.D.N.Y. May 7, 2014).

Numerous courts have conditionally certified collective actions involving exotic dancers who, like Plaintiffs, allege they have been misclassified as independent contractors. Many courts have granted such certification as recently as last year. *See* Exhibit 3, *Aguiar v. M.J. Peter & Associates, Inc., et al.*, 20-CIV-60198-RAR (S.D. Fla. Sep. 10, 2020); Exhibit 4, *Shakeena Rice v. Mr. T's, Inc., et al.,*3:20-cv-8695-TKW-EMT (N.D. Fla. Jan. 22, 2021); Exhibit 5, *Gabriela Rosario v. 11343 Penrose Inc., et al.,*2:20-cv-4715-SB-RAO (C.D. Cal. Oct. 26, 2020); Exhibit 6, *Harris v. 68-444 Perez, Inc., et al.,* 19-2184 JGB (SPx) (E.D. Cal. Apr. 23, 2020); Exhibit 7, *Angelica Mora v. Stars Planet, Inc., et al.,*CV 20-

414-JFW(JCx) (C.D. Cal. May 29, 2020); Exhibit 8, *Truehart, et al. v. Dartmouth Clubs, Inc., et al.,* 1:20-cv-10374-DJC (D. Mass. Oct. 21, 2020); Exhibit 8, *Jordan Manasco v. Best in Town, Inc., et al.*, 2:21-cv-00381 (N.D. Ala. Mar. 17, 2022).

The authorities supporting conditional certification of collective actions involving exotic dancers are vast. *See Espinoza v. Gilardi South Enterprises, Inc.*, No. 14-CV-21244-GOODMAN, 2014 WL 54103017 (S.D. Fla. Oct. 23, 2014); *Ortega v. Spearmint Rhino Companies Worldwide*, No. 17-cv-206-JGB, 2019 WL 2871156 (C.D. Cal. May 15, 2019); *Degidio v. Crazy Horse Saloon & Rest., Inc*., No. 4:13-cv-02136-BHH, 2015 WL 5834280, at *19 (D.S.C. Sept. 30, 2015) (collecting cases and "not[ing] that the vast majority of district courts in similar cases involving exotic dancers have granted conditional class certification"); *Verma v. 3001 Castor, Inc.*, No. 13-3034, 2014 WL 2957453, at *1 (E.D. Pa. June 30, 2014) (granting conditional certification to a class of exotic dancers); *Stevenson v. Great Am. Dream, Inc.*, No. 1:12-CV-3359-TWT, 2013 WL 4217128, at *1 (N.D. Ga. Aug. 14, 2013) (same); *Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2012 WL 6928101 (N.D. Tex. Nov. 29, 2012) (same), report and recommendation adopted, 2013 WL 271665 (N.D. Tex. Jan. 23, 2013); *Ruffin v. Ent. of the E. Panhandle*, No. 3:11-CV-19, 2012 WL 761659, at *1-5 (N.D.W. Va. Mar. 7, 2012) (same); *In re Penthouse Exec. Club Comp. Litig*., No. 10 Civ. 1145(NRB), 2010 WL 4340255 (S.D.N.Y. Oct. 27, 2010) (same); *D'Antuono v. C*

*& G of Groton, Inc.*, No. 3:11cv33 (MRK), 2011 WL 5878045 (D. Conn. Nov. 23, 2011) (same); *Green v. Plantation of Louisiana, LLC*, No. 2:10-0364, 2010 WL 5256354 (W.D. La. Nov. 24, 2010) report and recommendation adopted, 2010 WL 5256348 (W.D. La. Dec. 15, 2010) (same).

Plaintiffs have submitted evidence showing that most, if not all, of Rick's Cabaret dancers were classified as independent contractors though they are subject to the clubs' control (based on the clubs' right to exercise control over its dancers, and other factors). In addition to the evidence showing their misclassification, Plaintiffs also submit evidence that all dancers perform the same job duties at Defendants' club, all dancers were under the supervision, management, rules and policies of Defendants, and all dancers were subject to the same pay policies of Defendants, including wage policies, fee policies, and tip out policies.

Furthermore, Plaintiffs also demonstrate that those similarly situated individuals do, or would if notified, desire to opt-into the present suit. There are at least several dozen more current/former dancers at Rick's Cabaret who are either interested in joining the present action, or would be interested in joining if they were given notice of the lawsuit's existence. Brown Decl. ¶ 23; Sdrigotti Decl. ¶ 23; Urena Decl. ¶ 23. This is sufficient for Plaintiffs to satisfy their "minimal" burden at this early stage. *Lynch*, 491 F.Supp.2d at 368.

> ### B.    The Court Should Approve Plaintiffs' Proposed Notice and Notice Process

In light of the relevant case law and evidence submitted, the Court should order the notice to be mailed, emailed, and texted to all the dancers at Rick's Cabaret who have been classified as non-employees, giving them a meaningful opportunity to understand their rights and to join this litigation if they chose. *Nash v. CVS Caremark Corp.*, 683 F.Supp.2d 195, 200 (D.R.I. Feb. 9, 2010).

Additionally, the Court should order the notice be posted in a public location near the public entrance for a majority of the dancers of Rick's Cabaret as well as in the dressing rooms (at least 3 by 5 feet, in bright colors at location agreed to by counsel, consisting of Exhibit 1 and 2) and on Rick's Cabaret's website, including on Rick's Cabaret's Instagram and Facebook page. Plaintiffs request that the Court authorize their counsel to send the proposed notice and consent form attached here as Exhibits 1 and 2. This proposed notice is "timely, accurate, and informative." *Hoffman-La Roche*, 493 U.S. at 172. This proposed notice is similar in form and content to notices that have been routinely approved in FLSA cases. The form and content of a section 216(b) notice should maximize participation. The following is a brief discussion of the sufficiency of the proposed notice and related issues:

- The time period is appropriate. Because this case alleges a "willful" violation of the FLSA, *see* Plaintiffs' Complaint [Dkt. 1], the applicable statute of limitations is three years. 29 U.S.C. § 255(a); *see Vasto v. Credico (USA) LLC*, No. 15 Civ. 9298 (PAE), 2016 WL 2658172, at *16

(S.D.N.Y. May 5, 2016) (allegations of willfulness adequate to support three-year time period);

- Defendants should be ordered to produce to Plaintiffs' counsel, within ten (10) days of any Order, a list of the dancers who have worked at Rick's Cabaret, including their names and last-known mailing addresses, telephone numbers, email addresses, work locations, copies of driver's license (this is common to prove age) and dates they have worked at Rick's Cabaret. *See Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 539 (N.D. Cal. 2007); *Deatrick v. Securitas Sec. Servs. USA, Inc.*, No. 13-cv-05016-JST, 2014 WL 878203, at *5 (N.D. Cal. Oct. 20, 2014); *Hoffmann–LaRoche*, 493 U.S. at 170; *Hernandez v. NGM Mgmt. Grp. LLC*, No. 12 Civ. 7795(RWS), 2013 WL 5303766, at *5 (S.D.N.Y. Sept. 20, 2013);

- Issuing notice via email and text message, as well as U.S. mail, for the dancers for whom that contact information is available, is also appropriate here. *See Syed v. M-I, L.L.C.,* No. 1:12-CV-1718 AWI MJS, 2014 WL 6685966, at *8 (E.D. Cal. Nov. 26, 2014); *Otey v. CrowdFlower, Inc.*, No. 12-cv-05524-JST, 2013 WL 4552493, at *5 (N.D. Cal. Aug. 27, 2013); *Martin v. Sprint/united Mgmt. Co.*, No. 15 Civ. 5237 (PAE), 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016);

- Defendants should also be required to post the notice online on their website and in the dressing rooms at Rick's Cabaret and adjacent to the entrance door for any dancer;

- The Court should set a notice period of at least 60 days because of the large potential size of the class and because of the high turnover among dancers. *See, e.g., Otey*, 2013 WL 4552493, at *5 (finding "that the 90–day opt-in period is reasonable given the size of the class"); *Carrillo v. Schneider Logistics, Inc.*, No. CV 11-8557 CAS (DTBx), 2012 WL 556309, at *15 (C. D. Cal. Jan. 31, 2012);

- The Court should also authorize Plaintiff to mail, email, and text a reminder to all individuals who have not yet opted-in to this matter within 30 days of the first notice mailing. As people often disregard collective action notices, courts regularly authorize reminder notices to increase the chance that workers will be informed of their rights. Plaintiff will bear the cost of the mailing and reminder mailing, and it will not change the end of the notice period.

///
///
///
///
///

## VII.  CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter an order conditionally certifying this matter for notice pursuant to § 216(b) of the FLSA and that notice as described above be conducted.

Dated: November 23, 2022

*s/ John P. Kristensen*
John P. Kristensen (*Pro Hac Vice*)
Frank M. Mihalic, Jr. (*Pro Hac Vice*)
Peter Cho (NY State Bar No. 2910339)
**CARPENTER & ZUCKERMAN**
8827 W Olympic Boulevard
Beverly Hills, California 90211
Telephone: (310) 273-1230
*kristensen@cz.law*
*fmihalic@cz.law*
*pcho@cz.law*

***Attorneys for Plaintiffs***

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on Wednesday, November 23, 2022 a true and correct copy of the attached

**PLAINTIFFS' MOTION FOR NOTICE PURSUANT TO 29 U.S.C. § 216(b)** was served via

CM/ECF upon the following parties pursuant to Rule 5 of the Federal Rules of Civil Procedure:


Jeffrey A. Kimmel
M. Adil Yaqoob
**AKERMAN LLP**
1251 Avenue of the Americas, 37th Floor
New York, NY 10020
Email: *jeffrey.kimmel@akerman.com*
Email: *adil.yaqoob@akerman.com*

***Counsel for Defendants***


*/s/ Frank M. Mihalic, Jr.*
Frank M. Mihalic, Jr.
