UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANGELA BROWN, *et al.*,<br><br>      Plaintiffs,<br><br>     -v.-<br><br>PEREGRINE ENTERPRISES, INC. *d/b/a* RICK'S CABARET NEW YORK, RCI ENTERTAINMENT (NEW YORK) INC., RCI HOSPITALITY HOLDINGS, INC. *f/k/a* RICK'S CABARET INTERNATIONAL, INC., RCI MANAGEMENT SERVICES, ERIC LANGAN, ED ANAKAR, DOE MANAGERS 1-3, and DOES 4-10,<br><br>      Defendants. | 22 Civ. 1455 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

  On November 3, 2022, this Court granted Plaintiffs' motion to lift the stay in this case, after finding that Defendants had waived their arbitration agreements, and denied Defendants' cross-motions to strike Plaintiffs' collective action claims and for appointment of a substitute arbitrator. (Dkt. #54, 55 (the "Opinion")). Shortly thereafter, on November 14, 2022, Defendants filed an interlocutory appeal of the Court's decision (Dkt. #56), and then moved for a stay of this case pending resolution of the interlocutory appeal (Dkt. #57). On November 16, 2022, Defendants submitted their memorandum of law in support of their motion to stay the case. ("Def. Br." (Dkt. #58)). Plaintiffs then filed their opposition brief on November 30, 2022, and an additional brief response with supplemental authority on December 1, 2022. ("Pl. Opp." (Dkt. #65-66)). Finally, on December 9, 2022, Defendants submitted their reply memorandum of law in support of their motion. ("Def. Reply" (Dkt. #69)). For

the reasons stated in this Order, the Court grants in part Defendants' motion to stay this case. Specifically, the Court finds that this case may proceed on an individual basis as to those Plaintiffs who have appeared in the case as of the date of this Order while the Second Circuit considers the Court's denial of Defendants' cross-motion to strike Plaintiffs' collective action claims.

The Court notes at the outset that the parties' briefing on the instant motion to stay is largely redundant of arguments the Court previously considered in its Opinion on the motion to lift the stay in this case. (*See, e.g.*, Def. Br. 2-13 (reiterating Defendants' arguments from the motion to lift the stay and Defendants' cross-motions); Pl. Opp. 6-19 (similarly addressing issues the Court previously decided)). Given that one of the stay factors is the likelihood of success on the merits, this is partially unsurprising. That said, the Court does not intend to rehash its prior analysis, and will thus refrain from fully discussing issues it has previously decided.

### A. Motions to Stay Generally

Federal courts are empowered to stay cases pending appeals, but "[a] stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken* v. *Holder*, 556 U.S. 418, 433 (2009) (internal quotation marks and citations omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34. The "traditional standard for a stay" includes four factors:

> [i] whether the stay applicant has made a strong showing that he is likely to succeed on the merits; [ii] whether the applicant will be irreparably injured absent a stay; [iii] whether issuance of the stay will substantially injure the other parties interested in the proceeding; and [iv] where the public interest lies.

*Id.* at 425-26 (internal quotation marks omitted). The Second Circuit has

> treated these criteria somewhat like a sliding scale, citing approvingly other circuits' formulation that [t]he necessary level or degree of possibility of success will vary according to the court's assessment of the other stay factors and explaining that [t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [a] plaintiff will suffer absent the stay. Simply stated, more of one excuses less of the other.

*Thapa* v. *Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006) (alterations in *Thapa*) (internal quotation marks omitted). Of potential significance to the instant motion, a moving party may satisfy the first factor — likelihood of success on the merits — by showing that there are "'serious questions going to the merits of the dispute' and the balance of hardships tips 'decidedly' in the movant's favor." *Zachman* v. *Hudson Valley Fed. Credit Union*, No. 20 Civ. 1579 (VB), 2021 WL 1873235, at *1 (S.D.N.Y. May 10, 2021) (quoting *Citigroup Glob. Markets, Inc.* v. *VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35-38 (2d Cir. 2010)).

3

### B. Analysis of the *Nken* Factors in This Case

#### 1. Likelihood of Success on the Merits[1]

Turning to the likelihood of success on the merits, the Court finds that Defendants have shown that a serious question exists as to their argument that Plaintiffs' collective action claims should be struck, but not as to waiver of the arbitration provisions or appointment of a substitute arbitrator. On this point, Defendants correctly note the Court's acknowledgement that the issues associated with waiver of the arbitration agreements in this case are somewhat unique. (Def. Br. 14). Specifically, the Court observed that the arbitration agreements appear to require cost-sharing, and that the American Arbitration Association ("AAA") did not appear to apply that contractual provision. (Opinion 6). That being said, in its Opinion, the Court applied the well-established rule that a party's failure to pay requested filing fees, and an arbitrator's subsequent termination of arbitration proceedings, constitute a waiver of the right to arbitrate. (*See id.* at 5-10 (citing, *inter alia*, *Nadeau* v. *Equity Residential Properties Mgmt. Co.*, 251 F. Supp. 3d 637, 641 (S.D.N.Y. 2017) (finding that defendant breached arbitration agreement and could not compel arbitration where AAA administratively closed case due to defendant's non-payment of fees); *Spano* v. *V & J Nat'l Enters.*, LLC, 264 F. Supp. 3d 440,

---

[1] The Court notes that it has considered Plaintiffs' supplemental authority, *Agerkop* v. *Sisyphian LLC*, No. 19 Civ. 10414 (CBM) (JPRX), 2021 WL 4348734 (C.D. Cal. July 26, 2021), in which the district court found that none of the *Nken* factors weighed in favor of staying the court's decision to lift an arbitration stay pending an interlocutory appeal. However, because *Agerkop* is an out-of-circuit case and dealt with a unique California statute, *see id.* at *2-3, the Court focuses its attention on cases from within the Second Circuit.

4

453 (W.D.N.Y. 2017) (same); *Brown* v. *Dillard's, Inc.*, 430 F.3d 1004, 1013 (9th Cir. 2005) (same))).  And the Court discussed in detail the import of a recent decision from a sister court on which it relied — *Cota* v. *Art Brand Studios, LLC*, No. 21 Civ. 1519 (LJL), 2021 WL 4864588 (S.D.N.Y. Oct. 15, 2021) — dealing with a factually analogous waiver of the right to arbitrate.  (Opinion 7-9). Further, the Court found that the arbitrations "have been had" in accordance with the agreements (*see* Def. Reply 3; Pl. Opp. 13), providing an independent reason why the arbitration stay should have been lifted.

  The Court notes Defendants' reliance on cases granting stays where a court has previously denied an initial stay pending arbitration or motion to compel arbitration.  (*See* Def. Br. 8 (citing *Cendant Corp.* v. *Forbes*, 72 F. Supp. 2d 341, 343 (S.D.N.Y. 1999); *Sutherland* v. *Ernst & Young LLP*, 856 F. Supp. 2d 638 (S.D.N.Y. 2012))).  However, this case is in a fundamentally different procedural posture.  This case *was* stayed pending the outcome of the parties' arbitrations.  The Court only lifted the stay once it determined that Defendants had waived their right to arbitrate, relying on the established caselaw discussed above.  As such, the Court, even applying the lesser "serious question" standard, does not find that Defendants have made a showing that such question exists, particularly in light of the Court's alternative holding that the arbitrations have been had.  *See, e.g.*, *Doe* v. *Trump Corp.*, No. 18 Civ. 9936 (LGS), 2020 WL 2538400, at *3 (S.D.N.Y. May 18, 2020) ("Accordingly, [d]efendants have not shown a substantial possibility of success on appeal on either of the independent holdings of the [o]pinion — that the doctrine of

5

estoppel does not apply and that, even if it did, [d]efendants waived any right to arbitrate." (citing *In re Albicocco*, No. 06 Civ. 3409 (JFB), 2006 WL 2620464, at *5 (E.D.N.Y. Sept. 13, 2006) (observing that movant must demonstrate likelihood of success on merits of each independent basis for the ruling))). Although Defendants suggest that the Second Circuit is an outlier insofar as it does not require automatic stays upon the filing of interlocutory appeals pursuant to Section 16 of the FAA (Def. Br. 7 n.7), this Court adheres to Second Circuit law, and does not find that this fact alone creates a serious question regarding the merits.

Likewise, Defendants offer no meaningful argument that this Court erred in denying their request to appoint a substitute arbitrator. The Court's resolution of Defendants' cross-motion to appoint a substitute arbitrator was simple: *In re Salomon Inc. Shareholders' Derivative Litigation*, 68 F.3d 554 (2d Cir. 1995), and *Moss* v. *First Premier Bank*, 835 F.3d 260 (2d Cir. 2016), applied to the subject arbitration agreements, and foreclosed the appointment of a substitute arbitrator. Defendants protest that neither of these cases "involved an arbitral forum refusing to administer an arbitration because one party refused to adhere to the parties' arbitration agreement regarding payment of fees." (Def. Br. 12). Fair enough. But Defendants do not suggest that this is a distinction with a difference, or that the Second Circuit would reverse those clear precedents on this factual basis. In its decision on the cross-motion to appoint a substitute arbitrator, the Court compared the arbitration agreements' language regarding arbitration before the AAA with the language the Second

6

Circuit analyzed in *Moss,* and found myriad "indications of exclusivity" of the arbitral forum. (Opinion 14-15). In light of clear Second Circuit precedent on this issue, the Court does not believe that Defendants have shown a likelihood of success, or even a serious question.

The Court does find, however, that a serious question exists on the collective action waiver issue. In its prior Opinion, the Court noted that class and collective action waivers are generally enforceable even outside of the arbitration context. (Opinion 16-17). The Court then analyzed the specific language of the collective action waivers here, and noted that the provisions were "not models of clarity." (*Id.* at 16). This is because the waivers contain language suggesting they may apply outside of arbitration (*id.* at 17 (noting the waiver refers to "court, arbitrator or any other tribunal")), even as they are located under the heading "Arbitration" (*id.*). The Court nonetheless found that Defendants had breached the arbitration agreements, and thus that the collective action waivers could not be enforced, regardless of the agreements' severability provisions. (*Id.* at 18). Because of the lack of clarity regarding the collective action waiver, as well as the fact that the severability provision may be interpreted by the Second Circuit, there is, at a minimum, a serious question to be considered on this issue.

### 2. Irreparable Injury

The Court next considers the second stay factor — irreparable injury. Defendants argue that their interest in proceeding before an arbitrator constitutes an irreparable injury, because "absent a stay, Defendants would be

forced to litigate the case in court, rendering any reversal of the [November 3, 2022 Order] effectively moot." (Def. Br. 16).  As before, Defendants rely on inapposite cases where a court denied a motion to compel arbitration but nonetheless stayed the case pending an interlocutory appeal of that decision. *See, e.g.*, *Zachman*, 2021 WL 1873235, at *1 ("Although, as plaintiff notes, monetary harm arising from increased litigation costs is typically not considered irreparable harm, [c]ourts have determined that defendants face a particular risk of irreparable harm when they have appealed an order refusing to compel arbitration of a potential class action." (internal quotation marks and citations omitted)); *Starke* v. *SquareTrade, Inc.*, No. 16 Civ. 7036 (NGG) (SJB), 2017 WL 11504834, at *2 (E.D.N.Y. Dec. 15, 2017) (same, following denial of motion to compel arbitration).  Once again, the Court's analysis of irreparable injury is altered by the procedural history of this case, in which (i) the claims in fact proceeded to arbitration and (ii) Defendants waived their right to continue in the arbitral forum.  The Court does not believe that Defendants are likely to succeed on the merits of their arguments regarding waiver of the arbitration agreements or appointment of a substitute arbitrator, and Defendants' increased costs of litigating this case in federal court do not "outweigh the strong likelihood that" they will not succeed on appeal. *Trump Corp.*, 2020 WL 2538400, at *4.  In other words, Defendants are not irreparably harmed by losing their opportunity to arbitrate because Defendants forfeited that opportunity.  In any event, increased litigation costs alone generally do not provide a dispositive "irreparable injury" requiring a stay. *See, e.g.*, *LifeTree*

*Trading Pte., Ltd.* v. *Washakie Renewable Energy, LLC*, No. 14 Civ. 9075 (JPO), 2017 WL 4862792, at *3 (S.D.N.Y. Oct. 27, 2017) (rejecting argument that "injury would come from the *cost* of [defendant] defending itself at trial").

Further, to the extent that Defendants point to irreparable injury being caused by allowing this case to proceed as a collective action (Def. Br. 16), the Court can redress such issue by staying Plaintiffs' collective action claims pending appeal. The Court has already recognized that a serious question exists on the Court's decision on the cross-motion to strike the collective action claims, thus lowering the showing required to make out irreparable injury. Plaintiffs dedicate little briefing to the collective action waiver issue. (*See* Pl. Opp. 20-21 (discussing only issues associated with the waiver of the right to arbitrate, and distinguishing Defendants' cases)). Instead, Plaintiffs note that, absent a stay, "Defendants would need to defend a motion for collective certification and a motion for equitable tolling[.]" (*Id.* at 21). And Plaintiffs attempt to distinguish *Zachman*, in which the court found that having to proceed on a "class-wide basis" constituted irreparable harm because the defendant would be "forced to incur substantial costs that would otherwise be mooted by a successful appeal[,]" 2021 WL 1873235, at *2, by noting that this case does not involve the same complex discovery. (Pl. Opp. 20-21). But Plaintiffs' filing of a motion for collective certification and for equitable tolling belies Plaintiffs' argument that proceeding on a class-wide basis would not entail substantial additional costs. Because the Court believes that Defendants' appeal involves a serious question on the collective action waiver,

9

and because this case would dramatically transform if it became a collective action, the Court finds that Defendants have made a showing of irreparable injury on the collective action issue.

### 3. Injury to Plaintiffs and the Public Interest

Next, the Court considers the third and fourth factors — the harm to the Plaintiffs and the public interest. Plaintiffs rightly note that Defendants' failure to pay their share of the arbitration fees has already delayed this case, and that they have a considerable interest in being promptly compensated for Defendants' alleged violations of the FLSA. (Pl. Opp. 22-23). Defendants only briefly address the harm to Plaintiffs, and contend that Plaintiffs are only prejudiced by the time it takes to appeal, which prejudice can be allayed through a future potential award of interest. (Def. Br. 17).

There can be no question that Plaintiffs have an interest in being timely compensated for Defendants' violations, assuming they succeed in this case. *See, e.g.*, *In re Elec. Books Antitrust Litig.*, No. 11 MD 2293 (DLC), 2014 WL 1641699, at *12 (S.D.N.Y. Apr. 24, 2014) ("Delaying the trial would also delay any recovery due plaintiffs, should they prevail.... Likewise, the public interest favors a speedy trial and resolution of this matter."). At the same time, the Court agrees with Defendants that even if Plaintiffs face harm, "it appears to be less than overwhelming and fully reparable"; indeed, Plaintiffs' monetary harm could be "fully remedied by an award of pre-judgment interest." *Sutherland*, 856 F. Supp. 2d at 643; *see also id.* ("plaintiff is not contending that the delay in receiving an award will cause her additional practical harm, as might be the

case if she were currently in extremely straitened financial circumstances"). Regardless, because the Court finds that the only serious question posed by Defendants' appeal relates to the collective action waiver, Plaintiffs will be able to move forward with this case and seek redress, albeit only on behalf of the current Plaintiffs of record.

The Court finds that the public interest does not weigh in favor of either side. Plaintiffs reiterate the public interest in moving this case along, as well as the importance of vindicating the "underlying policy of the FLSA[.]" (Pl. Opp. 22-23). As above, the Court credits these arguments. But Plaintiffs give unnecessarily short shrift to the interests of judicial economy implicated by an interlocutory appeal. (*Id.* (noting that arguments about judicial resources come up on every motion to stay pending appeal)). Beyond pointing to the federal policy favoring arbitration, Defendants lean into this judicial efficiency argument, and note that courts often find that stays pending appeal are in the public interest. (Def. Reply 9). On the point of judicial efficiency, courts in this District go both ways, and thus neither party is fully correct. *Compare, e.g., Trump Corp.*, 2020 WL 2538400, at *6 (noting that "[a]s a general matter, the public interest in judicial economy counsels slightly in favor of a stay[,]" but nonetheless denying motion to stay), *with, e.g., Medien Pat. Verwaltung AG v. Warner Bros. Ent. Inc.*, No. 10 Civ. 4119 (CM) (GWG), 2014 WL 1169575, at *3 (S.D.N.Y. Mar. 21, 2014) (rejecting party's public interest argument in favor of stay, and noting that concerns about judicial resources apply "to every motion to stay pending appeal"). Further, both sides make compelling, if dueling,

arguments about important federal legislative schemes — the FLSA and the FAA — and the Court finds no reason to prefer the vindication of one over the other.

### 4. Balancing the Factors

Considering all four factors as applied to the three motions implicated by the Court's Opinion — Plaintiffs' motion to lift the stay due to Defendants' waiver of the arbitration agreements, and Defendants' cross-motions to appoint a substitute arbitrator and to strike Plaintiffs' collective action claims — the Court finds that the stay factors only weigh in favor of staying Plaintiffs' collective action claims. Defendants have failed to show a likelihood of success on the merits (or even a serious question) related to Court's findings regarding the waiver of their arbitration agreements or the appointment of a substitute arbitrator. So, too, have they failed to show irreparable injury, particularly in light of their meritless appeal of these issues. The Court does find, however, that issues related to the collective action waiver are a closer call, and that Defendants would suffer irreparable harm in the form of litigating this case on a collective basis beyond those Plaintiffs who have already joined the case, or defending against Plaintiffs' motions for collective certification and equitable tolling.

## CONCLUSION

Accordingly, Defendants' motion to stay this case pending their interlocutory appeal is granted in part and denied in part. The Court will stay only issues implicated by the collective action waiver. Specifically, Plaintiffs'

motions for conditional certification (Dkt. #63) and equitable tolling (Dkt. #64) are stayed pending the Second Circuit's consideration of Defendants' appeal. In line with this decision, this case shall proceed on an individual basis. Discovery shall proceed as to those Plaintiffs who have joined this case as of the date of this Order, but not as to other prospective plaintiffs.

The parties are **ORDERED** to submit to the Court a joint letter discussing next steps in this case by **January 6, 2023**. Defendants shall file an answer to the Complaint on or before **January 6, 2023**. Additionally, the parties are **ORDERED** to submit to the Court a proposed case management plan for conducting discovery on an individualized basis for Plaintiffs who have already joined this case by **January 6, 2023**.

The Clerk of Court is directed to terminate the pending motion at docket entry 57.

SO ORDERED.

Dated:  December 13, 2022
        New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge